UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RICHARD MARTIN, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent ) | 2:21-cr-00016-JAW-1<br>2:22-cv-00311-JAW |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Motion, ECF No. 49.) Following a guilty plea, Petitioner was convicted of possession with intent to distribute forty grams or more of fentanyl; the Court sentenced Petitioner to 144 months in prison. (Amended Judgment, ECF No. 45.)

Petitioner claims his attorney provided ineffective assistance prior to his guilty plea and at sentencing. The Government requests dismissal. (Response, ECF No. 65.)

Following a review of the record and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request and dismiss Petitioner's motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In May 2020, law enforcement officers arrested an individual named Dustin Homewood and seized from his person and his vehicle approximately 350 grams of fentanyl, 5 grams of methamphetamine, brass knuckles, a loaded handgun, ammunition, and approximately $1,000 in cash. (Revised Presentence Investigation Report (PSR) ¶¶ 4–

5, ECF No. 36.) The evidence collected during the investigation, including text messages, Facebook messages, and recorded phone calls, revealed that Homewood and Britney Thurlow-Gurney had stolen the drugs from Petitioner, who was part of a larger drug distribution operation with a source of supply in Massachusetts. (*Id.* ¶¶ 5–13.)

In February 2021, Petitioner was indicted for possessing with intent to distribute forty grams or more of a mixture of substance containing fentanyl. (Indictment, ECF No. 1.) Petitioner pled guilty in July 2021. (Change of Plea Hearing, ECF No. 26.) Pursuant to a plea agreement, the Government agreed to recommend reductions of three levels for acceptance of responsibility and a three-level reduction for pleading guilty via video proceedings during the COVID-19 pandemic; in exchange, Petitioner pled guilty and waived any appeal if the sentence did not exceed ninety-seven months. (Plea Agreement, ECF No. 25.) Petitioner also admitted that Homewood and Thurlow-Gurney stole more than forty grams of fentanyl from him, which law enforcement recovered from Homewood, and Petitioner admitted that he sent numerous Facebook messages about the theft of fentanyl from him. (*Id.*; Prosecution Version, ECF No. 24.)

In September 2021, relying on recorded conversations, text messages, cooperating witness testimony, as well as the cash, weapons, and drugs seized, the probation officer initially recommended a base offense level of thirty-two based on approximately 6,000 kg of converted drug weight, a two-level enhancement for use of firearms, a two-level enhancement for the use or threatened use of violence, and three-level reductions for his acceptance of responsibility. (First Presentence Investigation Report at 8–9; ECF No. 28.) Because Petitioner had a criminal history category of VI, the initial recommended guideline

range was 235 to 293 months in prison, not accounting for the three-level variance for proceeding by videoconference. (*Id.* ¶¶ 80–81.) Petitioner raised several objections, including an objection to the firearms enhancement; Petitioner asserted that the testimony regarding the firearms was unreliable. (Petitioner's Objections, ECF No. 34.) The probation officer did not alter the recommendation on the firearm issue, but did modify the criminal history category to V, resulting in a guideline range of 210 to 262 months in prison, not accounting for the variance for video proceedings. (PSR at 31.)

At sentencing in January 2022, the Government asserted that the reductions for acceptance of responsibility were no longer appropriate because Petitioner had engaged in new criminal conduct by using controlled substances while in pretrial custody. (Sentencing Transcript at 9, 11–12, ECF No. 57.) Petitioner did not maintain any objections to the content of the PSR, but Petitioner disputed the Government's contention regarding the three-level reductions. (*See e.g.*, *id.* at 22–24.) The Court applied the reductions for acceptance of responsibility. (*Id.* at 29–30.) The Court adopted the probation officer's recommendations, including the guideline range of 210 to 262 months, and the three-level variance for video proceedings during the COVID-19 pandemic, which essentially reduced the guideline range further to 151 to 181 months. (*Id.* at 29–30; 33.) The Court sentenced Petitioner to 144 months in prison. (Amended Judgment, ECF No. 45.) Petitioner did not file an appeal.

**DISCUSSION**

**A.      Legal Standards**

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

"*[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127–28.

Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*." *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also*

*Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

B. **Ineffective Assistance during Guilty Plea**

   1. **Inadequate Communication**

Petitioner claims that his attorney failed to communicate adequately about his defense. Petitioner acknowledges that counsel met with him twice each week, often via

6

videoconference, but Petitioner now disagrees with counsel's advice. For example, Petitioner asserts that counsel led Petitioner to believe that he would be accountable for a lower drug quantity and estimated a sentence of ninety-seven months if he pled guilty. The alleged representations, however, were not necessarily unreasonable given counsel's knowledge at the time. *See Knight v. United States*, 37 F.3d 769, 775 (1st Cir. 1994) ("an inaccurate prediction about sentencing will generally not alone be sufficient to sustain a claim of ineffective assistance of counsel"). The plea agreement also explicitly stated that the ninety-seven-month appeal waiver did not imply a sentence below ninety-seven months.

Petitioner argues he was coerced to plead guilty rather than proceed to trial because counsel advised that Petitioner would likely lose at trial and face a sentence of twenty-five or thirty years. Firm advice and unpleasant news are not coercion. *See United States v. Marrero-Rivera*, 124 F.3d 342, 349 (1st Cir. 1997) (noting that strong urging that plea is in client's best interest is not coercion and requiring specific credible affirmative evidence to undermine presumption of validity of plea colloquy statements that there was no coercion). The ample evidence of Petitioner's incriminating statements supports counsel's prediction that Petitioner would have likely lost at trial. Furthermore, counsel correctly predicted that a guilty plea before the end date for video proceeding variances would greatly reduce his sentence. If Petitioner had lost at trial, he would likely have had an

effective offense level that was six points higher, and his guideline range would have been 292 to 365 months instead of 151 to 188 months.[1]

### 2. Investigation

Petitioner contends that his attorney failed to conduct research or hire an investigator before advising Petitioner to plead guilty. Petitioner, however, does not present any evidence or describe any facts relevant to his guilt or innocence that an investigation would have revealed. Petitioner, therefore, has not established that his attorney acted unreasonably or that he was prejudiced by his attorney's decisions regarding the scope of the investigation that was necessary. To the extent Petitioner argues that further investigation would have assisted him at sentencing because it could have provided additional clarity on the drug quantity attributed to him, Petitioner's argument fails. Petitioner was the individual in the best position to know the extent of his drug distribution conduct, and a defendant is not entitled to "complete knowledge" during negotiations and before entering a guilty plea. *United States v. Ruiz*, 536 U.S. 622, 630 (2002); *see also*, *Ayala v. United States*, No. 2:18-CR-00090-GZS-1, 2022 WL 355778, at *4 (D. Me. Feb. 7, 2022) (noting that it is rare in this district to authorize the preparation of a presentence report before a guilty plea).

### 3. Plea Negotiations

Petitioner argues his attorney provided ineffective assistance because she did not secure a more favorable plea agreement. There is no evidence, however, that at any time

---

[1] Other allegations, such as the assertion that Petitioner's attorney was "rude" and "threatened" him are too vague to establish an ineffective assistance claim.

the Government offered a more favorable deal or was ever amenable to one.[2] Petitioner acknowledges that counsel specifically advised a plea before the date on which the Government ceased recommending three-level variances for proceeding by video, and as previously discussed, counsel's advice benefited Petitioner greatly.

Because Petitioner has not alleged any circumstances showing inadequate communication, investigation, or negotiation, he has failed to establish that his attorney provided ineffective assistance at the plea stage.

### C.    Ineffective Assistance at Sentencing

#### 1.    Explanation of the PSR

Petitioner asserts that he did not understand the PSR because his attorney failed to review it with him or explain its contents or its implications. The allegations are implausible. First, Petitioner has pointed to no corroborating evidence in the record to

---

[2] In *Missouri v. Frye*, 566 U.S. 134 (2012), the Supreme Court held that counsel performs deficiently by failing to communicate a formal plea offer and that "[t]o establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147. *In Lafler v. Cooper*, 566 U.S. 156 (2012) the Supreme Court held that the same prejudice standard applies when a plea offer is communicated but rejected on deficient advice. *Id.* at 160, 166. Petitioner does not allege counsel failed to convey a more favorable plea offer or advised him to reject a more favorable plea offer, but I assume for purposes of discussion that the reasoning in *Frye* and *Lafler* applies to other types of claims about more favorable plea negotiations and provides an alternative to the standard prejudice inquiry for guilty pleas. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (when challenging a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

support his contention. In addition, Petitioner's allegations directly contradict Petitioner's statements at the sentencing hearing. (Sentencing Transcript at 8–9.)

### 2. Drug Quantity and the Firearm Enhancement

Petitioner claims his attorney performed unreasonably by failing to object to the drug quantity. Petitioner presents no evidence or argument undermining the evidence in the record supporting the drug quantity estimate, including his own recorded conversations, text messages, and the testimony of multiple witnesses. The probation officer and the Court generally made conservative assumptions so as not to overstate the relevant conduct. Petitioner claims there were some inconsistencies in his messages, but he does not describe or identify in any detail the inconsistencies or explain how they would have altered his guideline calculation, particularly given that the same offense level would have applied as long as the quantity was over 3,000 kg, which is approximately half of what the record supported. In other words, even though Petitioner failed to establish any error in the quantity finding, even if he could establish an error, for any objection to have mattered, the error or unsupported portion of the drug quantity calculation would have to be substantial. Petitioner does not point to any error or inconsistency of sufficient magnitude to render unreasonable the decision to forego an objection on that issue.

Instead, Petitioner argues that his attorney should have objected because the drug quantity findings are at odds with the Supreme Court's opinions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that any fact (besides the fact of a prior conviction) which "increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a

10

jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  In *Alleyne*, the Supreme Court clarified that the same jury factfinding requirement applies to "[a]ny fact that, by law, increases the penalty for a crime" including a fact that increases a "mandatory minimum" for an offense.  *Alleyne*, 570 U.S. at 103.

Petitioner's argument lacks merit because his statutory penalty range was only impacted by the quantity alleged in the indictment and admitted during his guilty plea, namely the quantity of fentanyl that exceeded forty grams.  The judicial factfinding regarding the guideline drug weight calculation did not violate the principles of *Apprendi* or *Alleyne* because it only guided the Court's discretion within the statutory minimum and maximum and did not alter the statutory minimum or maximum.  *See United States v. Ramirez-Negron*, 751 F.3d 42, 49 (1st Cir. 2014) ("No *Alleyne* error occurs when a defendant's sentence is based entirely on Guidelines considerations without changing the applicable mandatory minimum"); *United States v. Caba*, 241 F.3d 98, 101 (1st Cir. 2001) ("*Apprendi* simply does not apply to guideline findings (including, inter alia, drug weight calculations) that increase the defendant's sentence, but do not elevate the sentence to a point beyond the lowest applicable statutory maximum").  Petitioner's argument that if he had proceeded to trial he would have received a lesser sentence unless the Government proved to a jury that he distributed more than 3,000 kg of drugs is unavailing.

Petitioner contends his attorney should have maintained the objection to the firearm enhancement.  Counsel originally asserted that the information on which it was based was unreliable, but the probation officer disagreed.  Counsel did not omit a clearly meritorious objection.  The record supported the findings regarding the firearm enhancement:

11

Homewood asserted that the firearm seized by law enforcement was stolen from Petitioner along with the drugs, and two cooperating witnesses asserted that Petitioner regularly carried firearms during drug transactions. Counsel's statements at the sentencing hearing shows that she was also motivated by other tactical considerations:

> And while I am trying to explain what brought us here, I am not trying to excuse it, and neither is Richard. If he had taken this case to trial and fought everything, that would be a different argument, but he pled. He didn't object to anything in the PSR. And there are things in the PSR that arguably are objectionable, but he did not. He owned the -- the accusations. He owned the PSR. He has owned everything. And here we are today asking the Court to keep in perspective what is sufficient.

(Sentencing Transcript at 25.)

Considering the multiple witnesses supporting the firearms enhancement and drug quantity calculation and given the expected challenge to the acceptance of responsibility reduction, there is no reasonable basis to second-guess counsel's tactical decision not to object to the drug quantity and not to maintain the firearm objection, but to reframe the decisions as further support in favor of an acceptance of responsibility finding.

### 3. Sentencing Disparities

Petitioner argues that his attorney provided ineffective assistance by not arguing for a lesser sentence to avoid sentencing disparities with the other individuals in this case, namely Homewood (who received a seventy-two-month sentence) and Thurlow-Gurney (who received probation). "Under 18 U.S.C. § 3553(a)(6), the sentencing court is obliged to consider 'the need to avoid *unwarranted* sentence disparities' among similarly situated defendants (emphasis added)." *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006).

Petitioner's argument fails because there was more than a sufficient basis to conclude that the three defendants should receive different sentences because they were not similarly situated. Petitioner focuses only on the drug quantity involved in the robbery and leading to his arrest following Homewood's arrest, but as previously discussed, the Court was free to consider other relevant conduct, including Petitioner's extensive involvement with a larger drug trafficking operation. Petitioner also had an extensive criminal history, and his conduct justified other enhancements, such as the use of firearms and the threats of violence.

Because the three defendants were situated differently and only shared conduct as to one subset of activities leading to their arrests and because the Court can consider other relevant conduct in exercising sentencing discretion within the wider statutory range even for the same criminal offense, Petitioner has not shown that an argument based on sentencing disparities would have been successful at sentencing. Counsel thus did not perform unreasonably by declining to make the argument, and Petitioner was not prejudiced by counsel's decisions.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

      A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

                                      /s/ John C. Nivison
                                      U.S. Magistrate Judge

Dated this 24th day of August, 2023.